# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

BENJAMIN E. CAMPBELL,
                Appellant,

            v.

UNITED STATES POSTAL SERVICE,
                Agency.

DOCKET NUMBER
AT-0752-15-0019-X-1

DATE: May 16, 2022

## THIS ORDER IS NONPRECEDENTIAL[1]

Christopher W. Waters, Birmingham, Alabama, for the appellant.

Eric B. Fryda, Esquire, Dallas, Texas, for the agency.

Margaret L. Baskette, Esquire, Tampa, Florida, for the agency.

### BEFORE

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

### ORDER

¶1      In a July 24, 2017 compliance initial decision, the administrative judge found the agency in partial noncompliance with the Board's final decision in the underlying appeal to the extent it improperly placed the appellant on leave

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

without pay (LWOP) status during the interim relief period. *Campbell v. U.S. Postal Service*, MSPB Docket No. AT-0752-15-0019-C-1, Compliance File, Tab 12, Compliance Initial Decision (CID); *Campbell v. U.S. Postal Service*, MSPB Docket No. AT-0752-15-0019-I-1, Final Order (Sept. 9, 2016); Petition for Review File, Tab 8. Accordingly, the administrative judge ordered the agency to pay the appellant back pay plus interest for time he was in LWOP status, from March 25 through September 9, 2016, and to provide him an explanation of its back pay and restored leave calculations. CID at 8.

¶2      On August 28, 2017, the agency informed the Board that it had taken the actions identified in the compliance initial decision. *Campbell v. U.S. Postal Service*, MSPB Docket No. AT-0752-15-0019-X-1, Compliance Referral File (CRF), Tab 1. As evidence of compliance, the agency provided, among other things, a sworn declaration from a Labor Relations Manager and that individual's August 24, 2017 letter to the appellant setting forth the agency's back pay and leave calculations. *Id.* at 15-25. In particular, the declaration and letter reflect that the agency determined that there was insufficient documentation to substantiate the appellant's placement on LWOP for 230.63 hours during the periods from March 26 through April 25, 2016, and from August 18 through September 9, 2016, and that it would therefore convert those 230.63 hours of LWOP to administrative leave and pay the appellant back pay with interest and credit him appropriate leave for those periods. *Id.* at 4-7, 15-17. Regarding the remainder of the interim relief period, from April 26 through August 1, 2016, the agency determined that the appellant was not entitled to back pay for the hours he was placed on LWOP because he had been medically unable to work and had used LWOP after exhausting his sick and annual leave. *Id.* at 8-9, 17-19, 61-74. In the August 24, 2017 letter, the Labor Relations Manager informed the appellant that, for the agency to process the back pay and credit the leave, he must complete and sign a Postal Service (PS) Form 8038 ("Employee Statement to Recover Back Pay") and sign a PS Form 8039 ("Back Pay Decision/Settlement Worksheet"),

which the agency would provide to him for signature after completing it using the information from his completed PS Form 8038. *Id.* at 4-5, 11, 21, 23-29.

¶3     The appellant responded to the agency's submission on September 23, 2017, stating that the agency had not spoken with him about the calculation of back pay, that he missed overtime pay during the LWOP period, and that he was currently repaying a debt for $4,282.54 in pay that he had erroneously received for the period in question. CRF, Tab 4. The appellant argued that he should receive back pay for 891.07 hours, as well as 251.82 hours of overtime pay, and be reimbursed for the debt he was paying to the agency. *Id.* at 2.

¶4     The agency responded on October 3, 2017, stating that it had not paid the appellant his back pay because he had not filled out and signed the forms necessary to process the payment. CRF, Tab 5 at 6. The agency also stated that the documentation supplied by the appellant regarding overtime pay was not from the time period at issue and that his claim about the debt owed to the agency was not properly raised in the compliance proceeding. *Id.* at 7.

¶5     The Board issued an order on February 2, 2018, directing the appellant to submit his arguments on the issue of the back pay and interest dispute to the Board within 15 days. CRF, Tab 6. The order indicated that failure to do so might cause the Board to assume the appellant was satisfied and dismiss the petition for enforcement. *Id.* The appellant did not respond.

¶6     On September 21, 2021, the Board issued an order directing the agency to provide an update on its compliance with the Board's final order. CRF, Tab 8. In particular, the Board ordered the agency to address whether it had received the completed and signed PS Form 8038 and signed PS Form 8039 from the appellant and whether it had provided him the back pay and leave described in its prior submissions. *Id.* In the event that the appellant had not submitted a completed and signed PS Form 8038 and/or signed PS Form 8039, the Board directed the agency to explain whether and why the absence of such forms precludes it from providing the appellant the back pay and restored leave it has determined he is

entitled to, as described in its compliance submission. *Id.* The Board informed the appellant of his right to respond to the agency's submission and that, if he did not respond, the Board might assume he was satisfied and dismiss the petition for enforcement. *Id.*

¶7    In an October 12, 2021 response, the agency informed the Board that the appellant has still failed to provide the completed and signed PS Forms 8038 and 8039. CRF, Tab 9. The agency further stated that it cannot process the appellant's back pay award as ordered by the Board's final decision without these forms. *Id.* at 4. In support, the agency submitted a copy of Postal Service Management Instruction (PSMI) EL-430-2017-6, which provides that the "hours calculation" method must be used whenever the back pay award calls for the employee to be "made whole." *Id.* at 10. Pursuant to the PSMI, the "hours computation" method makes the employee whole by determining the appropriate back pay award based on a hypothetical schedule that the employee would have worked but for the now-reversed personnel action and providing him all pay and employment-related benefits—such as sick and annual leave, health and life insurance, Thrift Savings Plan (TSP) participation, and retirement benefits—he would have received for that period. *Id.* The PSMI mandates that, for an "hours calculation" award to be authorized, the employee must complete and sign a PS Form 8038 and include all applicable information on mitigating damages and/or receipt of unemployment compensation, voluntary refunds of retirement plan contributions, participation in the TSP and/or health insurance, and receipt of annuity payments from OPM. *Id.* at 20. As the appellant had refused to provide the documentation necessary for the processing of an "hours calculation" award, the agency requested that the Board order a lump sum back pay award instead,

which it could process without any additional action on the appellant's part.[2] *Id.* at 6-7. The appellant did not respond.

¶8 On December 2, 2021, the Board ordered the agency to provide the amount of the lump sum award the appellant would be entitled to receive based on the payment of 230.63 hours of administrative leave, plus interest, and restored leave. CRF, Tab 10 at 3. The Board again informed the appellant of his right to respond to the agency's submission and that, if he did not respond, the Board might assume he was satisfied and dismiss the petition for enforcement. *Id.* at 3-4.

¶9 On January 31, 2022, the agency submitted its lump sum back pay calculation. CRF, Tab 11. The agency stated that the appellant was entitled to back pay for 230.63 hours at a rate of $28.28 per hour for a total of $6,637.53. *Id.* at 4. The agency further stated that the conversion of the appellant's LWOP to unpaid administrative leave was a mere characterization change and that there was no monetary value associated with it. *Id.* Finally, the agency stated that it believed the appellant was entitled to interest on the back pay award for the period through August 24, 2017, when he was originally notified of the calculations. *Id.* at 4-5.

¶10 On February 1, 2022, the appellant responded to the agency's submission arguing that the 230 hours of back pay was a "complete fabrication" but that he "no longer [has] any of this documentation." CRF, Tab 12 at 3. He also stated that the agency failed to address the "4680.00 that was taken each year for the two years that [he] worked when [he] was reinstated to [his] job" or his request for overtime back pay. *Id.*

¶11 In light of the foregoing, we find that the agency has provided the appellant with an accounting of the back pay owed to him. CRF, Tab 1. We further find

---

[2] According to PSMI EL-430-2017-6, a lump sum award is a single payment of a known amount of money that does not include other employment-related benefits or affect the compensation history used by the Office of Personnel Management to calculate retirement annuities. CRF, Tab 9 at 10.

that the appellant waived his challenge to the agency's calculations when he failed to respond to the Board's February 2, 2018 Order, and subsequent orders, instructing him to submit his arguments regarding back pay and interest. Even now, the appellant has provided no specific contradiction of the agency's accounting. We therefore adopt the agency's calculations.

¶12    In addition, we find that the appellant's refusal to complete, sign, and return the required PS Form 3083 has precluded the agency from processing his back pay award. The record reflects that, by letter dated August 24, 2017, the agency instructed the appellant that he must complete and sign the form before the agency could process his back pay award and provided him a copy of the form. CRF, Tab 1 at 21, 23-31. Moreover, during this compliance referral proceeding, the agency's submissions and the Board's orders have repeatedly reiterated the requirement that the appellant must submit the form before the agency could process his back pay award. CRF, Tabs 1, 5, 8-10. Nonetheless, as of present date, he has failed to return the completed form to the agency. When an appellant does not cooperate with an agency's efforts to achieve compliance, the Board may deny his petition for enforcement. *See Coe v. U.S. Postal Service*, 101 M.S.P.R. 575, ¶¶ 13-14, *aff'd,* 208 F. App'x 932 (Fed. Cir. 2006). Nonetheless, under the unique circumstances here, including the agency's commendable efforts to pay the appellant despite his failure to cooperate, we find it appropriate to order the agency to pay the appellant a lump sum back pay award to compensate him for the 230.63 hours for which he was improperly placed on LWOP status during the periods from March 26 through April 25, 2016, and from August 18 through September 9, 2016. Accordingly, we find that the appellant is entitled to a total of $6,637.53 plus interest through August 24, 2017, when he was notified of the back pay calculations and instructed to submit the completed PS Form 8038. CRF, Tab 11 at 4. We further agree that the appellant is not entitled to interest after August 24, 2017, as his failure to cooperate with the agency's efforts to

achieve compliance since that date has caused the delay. CRF, Tab 1 at 21, 23-31.

¶13     We ORDER the agency to pay the appellant a lump sum back pay award of $6,637.53 plus interest calculated from the date of accrual through August 24, 2017. Within 21 days from the date of this Order, the agency must provide evidence to the Board that it has completed this action.

¶14     The appellant may submit a reply to the agency's evidence of compliance with this Order within 21 days of the date of service of the agency's submission. Any such reply must be limited to the following issues: (1) whether the agency timely paid the principal amount of $6,637.53; (2) the agency's interest calculation, from the date of accrual through August 24, 2017; and (3) whether the agency timely paid the interest amount. If the appellant does not respond to the agency's submission within 21 days, the Board may assume that the appellant is satisfied and dismiss the petition for enforcement.


FOR THE BOARD:                              /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board
Washington, D.C.